IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| ANGELA SALTER | § | |
| v. | § | CIVIL ACTION NO. 5:21cv30 |
| BOWIE COUNTY JAIL, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Angela Salter, an inmate of the Bowie County Correctional Center proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of her constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants in the Plaintiff's amended complaint are the Bowie County Jail, LaSalle Corrections, and laundry officers Ms. Haynes and Ms. Forte.

**I. The Plaintiff's Complaint**

Plaintiff's amended complaint (Dkt. No. 7) is the operative pleading in the case. In her amended complaint, Plaintiff states that Haynes and Forte did not follow the recommendations of the outside medical provider. Her statement of claim reads, in its entirety, as follows:

> The Defendants failed to provide medical necessities recommended by medical provider on 11-12-2020 resulting in an irritation that caused myself to scratch thus causing an infection which led to hospitalization on 11-26-2020.

Plaintiff's original complaint states that she returned from an outside provider appointment on November 12, 2020, with an order for a cotton blanket due to a diagnosis of PUPPS, presumably referring to prutitic urticarial papules and plaques of pregnancy. The medical department wrote a form approving the blanket and said that Plaintiff would have to get it from the laundry department.

Plaintiff showed the form to Haynes, who told her that they did not have cotton blankets. She also asked Forte but was denied. Plaintiff states that she unsuccessfully grieved the issue on November 17. The blanket which she received caused a flare-up of her condition which resulted in her being hospitalized on November 26, 2020.

## II. The Defendants' Motion for Summary Judgment

The Defendants Haynes and Forte have filed a motion for summary judgment arguing that Plaintiff did not exhaust her administrative remedies. They attach a copy of her grievance file as summary judgment evidence.

The grievance file shows that on March 2, 2021, Plaintiff filed a grievance reading as follows:

> I requested a copy of the letterhead / prescription from my OB/NP Kerry Bruner stating I needed a cotton blanket (11/12/20) on 3/1/21. When I spoke with Ms. Gatlin and she said the only thing on file was the LaSalle one written by Mrs. Williams. While I was pregnant, they wouldn't prescribe anything to me, my outside care provider had to write it for me. I am requesting a copy for my own personal reference.

Dkt. No. 22, p. 21. The response to this grievance, signed by Health Services Administrator Ms. Ashley, stated as follows:

> We do not have a prescription for a blanket. Bowie County medical is now run by Turn Key Medical. There is only a handwritten suggestion for a blanket and medical has nothing to do with blankets or dispensing.

*Id.*

Plaintiff filed a Step Two appeal of this grievance on March 8, 2021, which reads as follows:

> I wrote a request to Mrs. Ashley and Major Nelson about receiving a copy of the letterhead note that NP Kenny Bruner wrote requesting for me to have a cotton blanket. All I am requesting is a copy of that. I am not trying to argue about the validity of it or anything. When I spoke to the grievance officer (3/8/21) she told me to go to Step 2. When I spoke with Mrs. Gatlin she said they no longer had the letterhead. I have copies of both requests and grievance.

Dkt. No. 22, p. 20. The response to this grievance, which bears an illegible signature in a box labeled "Jail Administrator," reads as follows:

> We do not have access to any order for a blanket. Mrs. Ashley stated that there was a note for an estimate [?] for a cotton blanket. Turn Key now is our medical provider

> and they have not written you an order for a cotton blanket. If you want one, request through them now.

*Id.*

The next document is labeled "LaSalle-Southwest Corrections - Bowie County Correctional Center Inmate Medical Instruction/Special Needs Forms." Dkt. No. 22, p. 22. The form is dated November 12, 2020, and signed by Ms. Williams, apparently a licensed vocational nurse. It contains a restriction saying "Cotton Blanket."

An Inmate Request Form signed by Plaintiff on February 27, 2021 (Dkt. No. 22, p. 23) reads as follows:

> Can I please get a copy of the prescription / letterhead from OB/NP Kerry Bruner stating I need a cotton blanket on 11/12/20.

The response to this request form, which appears to be signed by Mrs. Gatlin Neal, LVN, says "That cotton blanket prescription is no longer valid." *Id.*

Another Inmate Request Form, also signed by Plaintiff on February 27, 2021, reads as follows:

> I am requesting a copy of the prescription / letterhead from my OB/NP Kerry Bruner wrote [sic] on 11/12/20 stating I need a cotton blanket.

Dkt. No. 22, p. 24. The response to this request form, signed by Health Services Administrator K. Ashley, provides that "There is no order, it is a written note for estimated delivery sheet and it states 'if it is available.' Medical does not supply blankets." *Id.*

These are the only documents in the grievance file mentioning a blanket.

### III. Plaintiff's Responses

In her first response to the motion for summary judgment, Plaintiff states that she went to Bruner on November 12, 2020 and received a directive for a cotton blanket. She gave the directive to the medical department, which gave her a form to take to the laundry department, but Forte refused her request.

Plaintiff says that on November 17, she filed a grievance through LaSalle Corrections, but she never received a response. At the time the grievance was filed, LaSalle was starting procedures

3

to withdraw or non-renew their contract with Bowie County. Plaintiff states that she was hospitalized on or about November 26, 2020.

Plaintiff notes that all of the grievances in the summary judgment evidence are dated from February 1 to March 18, 2021, and were answered by grievance officer Davis, who was given the position some time after LaSalle was no longer contracted with the Bowie County Jail. Plaintiff states that she is unsure if Ms. Austin, the business manager, was handling grievances at that time or not. Plaintiff also states that Bowie County retains grievances for two years, so any grievances which she filed in November of 2020 would no longer have been in the system in January of 2023 when the Defendants were ordered to answer the lawsuit.

In her amended response to the motion for summary judgment, Plaintiff states that the motion for summary judgment says that there were no Step Two appeals, but the grievance file shows a Step Two appeal on the matter of obtaining the letterhead. She also says that there is no copy of a grievance resolution form for the March 2 or March 8 grievances.

The Court ordered the Defendants to reply to Plaintiff's assertions that the grievance process was effectively unavailable because she never received a response to a November 17 grievance and her hospitalization on November 26, and concerning the Bowie County retention policies. In their reply, the Defendants provide an affidavit from jail administrator Bob Page stating that Plaintiff is citing from a newer copy of the handbook than the one which was in effect at the time of the allegations. The affidavit says that there have been no reports of grievances being lost or not answered, but note that sometimes the inmates place grievances on the bars of the pod for the mailroom officer to pick up rather than giving them to the grievance officer or putting them in the box; placing the grievances on the bars is not considering a proper submission of the form.

When a grievance does not receive a response, the affidavit states that the inmate can resubmit because there was no strict filing period enforced for grieving particular events. Thus, if Plaintiff filed a grievance that did not receive a response in several days, she could have resubmitted it.

With regard to the retention policy, the Defendants state that Plaintiff was released from the jail on September 2, 2021, and so her grievances would be retained until September 2, 2023. As a practical matter, the Defendants say that grievances are retained indefinitely because there is no set procedure to purge them from the files. The Defendants further state that Plaintiff's March 2 grievance did not serve to exhaust administrative remedies because it did not address the failure to provide her with a cotton blanket.

In her first sur-reply, Plaintiff states that she could not resubmit her grievance due to being in the hospital. She says that she "returned from hospital on December 16, 2020, but was remanded at the Bi-State Justice Center due to the severity of wound care and other medical issues until cleared by medical. Salter did not return to the Bowie County Detention Center until January 26, 2020, which was after the contract switched over to Bowie County from LaSalle Corrections."

Plaintiff claims that when LaSalle Corrections' contract ended, LaSalle took all of the files and paperwork, including the medical records, which is why there is no copy of the November 17 grievance. She says that there are no copies of her medical records other than the order written by Nurse Williams on November 12, which was her personal copy of the order that she submitted.

In her second sur-reply, Plaintiff states that she filed a grievance on November 17, 2020, and was hospitalized on November 26. She said only five of those days were weekdays or business days, and she was giving the jail personnel time to respond but she was hospitalized while she was waiting. When she came back, she says that she could not file a grievance because there was a 15 day limit, so she proceeded with other grievances.

Plaintiff again says that the November 17 grievance was filed under the LaSalle contract, which ended on or around January 1, 2021. She says that grievance officer Davis told her that LaSalle took all of their files when the contract ended.

Plaintiff states that inmates had no other way to submit grievances besides putting them in the bars because of the "lack of a secure grievance box." Because her grievance had to go through

the mailroom, she says that she did not have time for the November 17 grievance to go through the process before she was admitted to the hospital.

**IV. Discussion**

A. Exhaustion of Administrative Remedies

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997e, which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This requirement means mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. *Johnson*, 385 F.3d at 515. Furthermore, the district court may not excuse failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison Litigation Reform Act, even to take "special circumstances" into account. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016).

The summary judgment evidence offered by the Defendants shows that the Bi-State Jail follows a two-step grievance process modeled after that used in the Texas Department of Criminal Justice. Under this procedure, a Step One grievance must be filed within 15 days of the date of the incident, and then an appeal must be filed within 10 days after an adverse decision at Step One. Dkt. No. 22, p. 12.

6

The Defendants offer summary judgment evidence showing that grievances are considered "submitted" when they are received by the grievance officer or placed in the grievance box. The mailroom officer walks through the facility daily to receive the forms directly from inmates and puts them in the box, and the grievance officer collects the forms from the box. Their summary judgment evidence states that "inmates sometimes place the grievance forms in the bars of the pods," but that this is not considered submitting the form. Dkt. No. 27, pp. 8-9.

Plaintiff's March 2, 2021 grievance asked for a copy of the prescription for a cotton blanket and did not discuss the fact that she did not get one. As such, this grievance cannot serve to exhaust her administrative remedies regarding the failure to provide a cotton blanket. *Johnson*, 385 F.3d at 517 (grievance is sufficient if it gives prison officials a fair opportunity to address the problem which will later form the basis of the lawsuit); *Petzold v. Rostollan*, 946 F.3d 242, 254 (5th Cir. 2019).

Plaintiff indicates that she submitted her November 17, 2020 grievance by placing it in the bars, saying that inmates had no other way of securely submitting grievances "because of lack of secure grievance box." She does not mention the option of handing her grievance directly to the officer collecting them, as the summary judgment affidavit sets out. Based upon the summary judgment evidence, the placing of a grievance on the bars in the hope that an officer will pick it up may be "substantial compliance" with the grievance procedure, but substantial compliance is not enough. *Dillon*, 596 F.3d at 268. Because Plaintiff indicates that she did not file this grievance properly, it cannot serve to exhaust her administrative remedies.

Plaintiff also contends that she went to the hospital and thus was unable to exhaust the grievance process. The summary judgment evidence shows that while there was a filing deadline for grievances, this was not strictly enforced. *See generally Gates v. Cook*, 376 F.3d 323, 331 and n.6 (5th Cir. 2004) (a grievance which is not rejected as untimely but is processed on the merits is not considered untimely).

In *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), *overruled by implication on other grounds in Jones*, 549 U.S. at 214-216, the plaintiff suffered a broken hand and was thus unable to file a timely grievance. When his hand healed, he filed a grievance, but it was returned unprocessed as untimely. The district court determined *sua sponte* that the plaintiff had failed to exhaust administrative remedies, but the Fifth Circuit held that these facts were sufficient to show that the grievance process was effectively unavailable to him. The court emphasized that "our holding is limited to the narrow facts of this case. More specifically, administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." *Days*, 322 F.3d at 868.

Unlike *Days*, Plaintiff could have timely filed a grievance by giving it to the proper official prior to going to the hospital. Nor did she make a subsequent attempt to exhaust her remedies and have such an attempt rejected as untimely - indeed, the summary judgment evidence indicates that a later grievance, after her return from the hospital, may not have been rejected as untimely because the summary judgment evidence shows that the filing time limits were not strictly enforced. To the extent that *Days* survives *Jones* and *Ross*, it is not applicable in this case.

While Plaintiff contends that LaSalle Corrections took all of the grievances when their contract expired, she states that she submitted her November 17 grievance by placing it on the bars, which the summary judgment evidence shows was improper. Whether or not a copy of this grievance exists in LaSalle's records but not Bowie County's is irrelevant; as noted above, prisoners must complete the administrative process in accordance with the applicable procedural rules. *Woodford*. 548 U.S. at 88. Because Plaintiff did not do so, she did not properly exhaust her administrative remedies.

The Fifth Circuit has held that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. Pre-filing exhaustion is mandatory and the case must be dismissed if available administrative remedies were

not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The summary judgment evidence, including Plaintiff's pleadings, show that she did not properly exhaust the grievance process before filing her complaint. Her lawsuit may therefore be dismissed. *See Tuft v. Texas*, 410 F.App'x 770, *774-75 (5th Cir. 2011) (summary judgment may be granted where the competent summary judgment evidence shows that the prisoner failed to exhaust her administrative remedies).

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion for summary judgment (Doc. No. 22) be granted and the lawsuit be dismissed without prejudice for failure to exhaust administrative remedies.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found.

An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 31st day of July, 2023.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE